Henry Epstein, J.
These are eight actions comprising identical facts and a single issue, tried simultaneously by agreement of counsel. Findings and conclusions were waived. Plaintiff, manufacturer of Revlon beauty products, sues to enjoin defendants from selling its products at less than the retail minimum selling prices fixed in its contracts with its customers. Defendants have purchased Revlon products from sources unknown to plaintiff and have sold them for less than the prices fixed by Revlon in its contracts with its retail customers. In these cases too, preliminary injunctions were issued but no certified copies were served on defendants. Defendants were fully aware of Revlon’s “ fair trade ” contracts and had been notified by letters to that effect by registered mail. They do not deny such knowledge nor do they deny the fact of such sales, which were also proved and not contested. There are some 45 States where fair-trade laws are in effect. Plaintiff seeks to protect its good will, symbolized by its trade-marks, built up at great expense over the years. Defendants all try to evade the effect of the fair-trade law of New York with the defense that plaintiff engages in sales at retail in competition with defendants and is therefore outside the scope of the defenses under Federal and State laws.
The New York Fair Trade Act is contained in article XXIY-A of the General Business Law, the applicable provision of which reads: “ 369-b. Unfair competition defined and made actionable. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section *548 three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.”
State enactments like the above have been sanctioned by the Congress of the United States in the Miller-Tydings and McGuire Amendments to the Sherman Anti-Trust Act (U. S. Code, tit. 15, § 45). The 1952 Amendment, known as the “ Maguire Act ” has been upheld in Schwegmann Bros. Giant Super Mkts. v. Lilly & Co. (205 F. 2d 788, cert, denied 346 U. S. 856). (General Elect. Co. v. Masters Inc., 307 N. Y. 229 [1954].)
In the instant cases plaintiff has shown extensive inquiries at considerable expense to seek out the defendants as violators of the laws by selling its products below the fixed prices. Defendants have no contracts with plaintiff and have purchased from unrevealed sources. Their books of account do not reveal the sales of such products. Testimony of plaintiff establishes loss of trade by contracting purchasers with whom defendants compete in neighborhood sales of cosmetic products; sales freely made by defendants at less than the fixed prices, sometimes at no more than one fourth or one half such fixed retail prices. These are generally in combined sales of other articles. Plaintiff’s products are the “ come-on ” for such customer inducement. Defendants’ purchases of Revlon products total some $18,000. No records of the specific items sold are available. Plaintiff’s cost of the investigations occasioned by protests against defendants’ violations of the statutes to plaintiff’s damage total some $5,139.47. No contradictory evidence was presented. Counsel for defendants stipulates that counsel for plaintiff would testify that his services, required by defendants ’ actions, were of a value of $500 for each case, without conceding that such would be taxable damages.
The defendants all rely upon the identical defense — that plaintiff, by operating and owning the Revlon Salon at 745 Fifth Avenue, in New York City, where one may purchase Revlon products at retail prices, has entered into competition with defendants and other retailers and thereby removed itself from the protection of the fair-trade statutes. The facts do not support defendants’ conclusion. Plaintiff Revlon’s beauty salon at 745 Fifth Avenue is the only place of its kind operated by plaintiff in the whole United States. There its products are demonstrated for operators of beauty parlors and the public is invited and taught how to use Revlon’s products. It is a business operated at a substantial loss (the single shop) and
*549 is part of the general advertising and publicity campaign of plaintiff. Similar salons on Fifth Avenue are operated by Elizabeth Arden, Helena Rubinstein, Coty and others. One may also purchase Revlon products at retail in this exhibition sales salon. It is this last fact, a fact prevailing in only this one place in the whole United States on which defendants rely. This defense has been held inadequate in a number of cases involving this and other plaintiffs similarly situated. On January 30, 1959, in two cases temporary injunctions were granted by Mr. Justice Hofstadter. In a brief opinion in Revlon v. Modell (17 Misc 2d 591) he held the identical defense to be insufficient and that the salon on Fifth Avenue on the same facts herein revealed not to constitute a retail establishment in competition with the defendant. In eight other eases Mr. Justice Levey granted temporary injunctions (N. Y. L. J., March 3, 1959, p. 11, col. 5). A host of other cases brought by other plaintiffs, similarly placed, in the years from 1956 to 1959 evidence this court’s support of plaintiff’s position. The single case relied upon by defendants is United States v. McKesson ds Robbins (351 U. S. 305). Study of that ease and the facts there revealed show it to be wholly unrelated to the instant cases. The vertical trade agreements were there not questioned. There it was the competition of defendant with independent wholesalers that was attacked. Revlon is not acting as a retailer and there is no horizontal price fixing by Revlon, whose salon on Fifth Avenue is a small incident to the major enterprise of manufacture and wholesale operations.
Neither the facts nor the law offer defendants an escape from their flagrant violations of the statutory protection accorded plaintiff’s products. Permanent injunctions will issue against each defendant. Damages are assessed against the defendants jointly in the sum of $5,139.47 and in addition thereto the defendants are severally liable in the sum of $500 for legal expense incurred by plaintiff in the prosecution of this action.
Judgment accordingly.