JOHNSON & JOHNSON, Plaintiff,

v.

JANEL SALES CORP., Defendant.

United States District Court
S. D. New York.
Feb. 16, 1961.

 

Rogers, Hoge & Hills, New York City, for plaintiff; George M. Chapman, C. Donald Mohr, New York City, of counsel.

W. Edward Woods, New York City, for defendant.

DIMOCK, District Judge.

This is a motion for a preliminary injunction against the sale of plaintiff's products at lower than "fair trade" prices. Plaintiff is a producer of surgical dressings, baby products, elastic products, ointments and other related articles.

It is alleged that plaintiff is a New Jersey corporation with its principal place of business in New Jersey and that defendant is a New York corporation with its principal place of business in New York.

Plaintiff's claim is based upon section 369–b of the New York General Business Law (Chapter 20 of the Consolidated Laws) which reads as follows:

"§ *369–b.   Unfair competition defined and made actionable*

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine–a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

Section 369–a, referred to in section 369–b quoted above, reads, in subdivision 1, as follows:

"§ *369–a.   Price fixing of certain commodities permitted*

"1.   No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class pro-

duced by others shall be deemed in violation of any law of the state of New York by reason of any of the following provisions which may be contained in such contracts:

"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor;

"(b) That the vendee or producer require any dealer to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

On October 28, 1957, plaintiff entered into a contract with William Cohen, of Levittown, New York, in which plaintiff was referred to as the manufacturer and Cohen the retailer and which recited that the manufacturer's products, the subject of the agreement, would be distributed under the manufacturer's trade mark, brand or name, in free, fair and open competition with commodities of the same general class produced by others and that the retailer was engaged in the sale of such products. The contract contained an agreement that the retailer would not offer for sale the products specified in a price list attached, or in said price list as it might be amended or revised by the issuance of a later one, at less than the minimum retail selling price stipulated for such a sale therein. The manufacturer on its part agreed to employ all reasonable means to obtain and enforce observance by competitors of the retailer of the minimum retail selling prices established by the contract.

The contract with Cohen was thus a contract entered into pursuant to the provisions of section 369–a of the General Business Law. Accordingly, pursuant to the terms of section 369–b, any sale of any commodity at less than the price stipulated in the contract constitutes actionable unfair competition

whether the person so selling "is or is not a party to such contract". Therefore, under the letter of the New York statute, defendant would be guilty of actionable unfair competition if it sold any commodity at less than the price stipulated, even though defendant was not a party to such a contract as that made with Cohen.

Defendant does not deny that it has been selling plaintiff's fair traded products at less than the stipulated prices but raises the defense that the provisions of the New York General Business Law are invalid as in violation of the federal antitrust laws. Plaintiff, however, relies upon the McGuire Act, 66 Stat. 632, 15 U.S.C. § 45,[1] which reads as follows:

"§ 45. *Unfair methods of competition unlawful; prevention by Commission—Declaration of unlawfulness; power to prohibit unfair practices*

"(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

"(2) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public pol-

1. Plaintiff's enforcement of a state-created right of action in the circumstances of this case would obviously not be immunized from the federal antitrust laws by the Miller-Tydings Act, 50 Stat. 693, 15 U.S.C. § 1, since that Act protects only the enforcement of fair trade contracts against parties to such contracts. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L. Ed. 1035.

icy ncw or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale.

"(3) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby.

"(4) Neither the making of contracts or agreements as described in paragraph (2) of this subsection, nor the exercise or enforcement of any right or right of action as described in paragraph (3) of this subsection shall constitute an unlawful burden or restraint upon, or interference with, commerce.

"(5) Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

It is to be noted that subdivision (2) deals with contracts such as that with Cohen in the present case and purports to validate them despite provisions of the antitrust laws.

Subdivision (3) then deals with relations such as exist here between plaintiff and defendant, a so-called "non-signer", where state law creates a right in the producer against a non-signer who sells at less than the price prescribed in such a contract as that which Cohen signed. Thus far plaintiff would seem to be justified in its position that the state law creating its right against the non-signing defendant was validated. Defendant, however, counters by citing subdivision (5) which provides that nothing contained in paragraph (2), the paragraph about contracts with signing sellers, should validate contracts "between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms or corporations in competition with each other." The question thus presents itself whether paragraph (5) prevents the validation of the state-created right which plaintiff seeks to enforce here.

█ Section 45(a) validates two rights of producers: the right to enforce price fixing contracts against signers and the right to enforce state-created rights against non-signers. I construe the section, in paragraph (5), as plainly saying that the right to enforce price fixing contracts against signers is not validated where the producer and the signer are both retailers or in competition with one another.

█ The Supreme Court, however, in United States v. McKesson & Robbins, Inc., 351 U.S. 305, 312, 76 S.Ct. 937, 941, 100 L.Ed. 1209, raised, without deciding, the question whether the words "in competition with each other" modified "between wholesalers" and whether, as a consequence, agreements between competitors would not be proscribed unless they were both wholesalers, or, as applied to the facts of this case, both retailers. District Judge Aldrich, nevertheless, in a concurring opinion in the later case of Esso Standard Oil Co. v. Secatore's, Inc., 1 Cir., 246 F.2d 17, certiorari denied 355

U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46,[2] took the position that the words such as "wholesalers" and "retailers" had meaning uncolored by the later phrase "or between persons, firms, or corporations in competition with each other." He expressed the view that, even in an area where retailers were not in competition with each other, they were still retailers within the meaning of the statute and the statutory disqualification of agreements between retailers was effective. I can find no escape from that conclusion under the clear words of the statute. To reach the result that the only disqualified agreements were those where the wholesaler parties or retailer parties were in competition with one another, one would have to construe the "or" before "in competition with each other" as "and". Even if that tour de force were accomplished, the resulting language would be so awkward that sentient beings would not be supposed to have conceived it. To convey the idea that the members of various categories must be in competition with each other, people do not say "between factors, or between retailers, and between persons, firms, or corporations in competition with each other." To express that idea they say instead "between factors, or between retailers, where such factors or retailers are in competition with each other".

While section 45(a) thus says that the right to enforce price fixing contracts against *signers* is not validated if the producer and the signer are either retailers or in competition with each other, the section nowhere says that the right to enforce state-created rights against *non-signers* is not validated where the party seeking enforcement and the non-signer are both retailers or in competition with one another.

It cannot be said that Congress dealt with the contract-created rights as representative of both groups for, in paragraph (4), which exempts "fair trading" from the charge of burdening, restraining or interfering with commerce, Congress took pains expressly to give absolution not only to the making of the price fixing contracts under paragraph (2) but also to the enforcement of the state-created rights under paragraph (3).

Despite this, defendant argues this motion as though the question to be decided were not whether the contract between plaintiff and Cohen were one "between retailers, or between persons, firms, or corporations in competition with each other" but as if the question were whether plaintiff and the party against whom plaintiff seeks to enforce the state-created right were both retailers or persons, firms or corporations in competition with each other.

Defendant would read section 45(a) as though there were added to paragraph (5) the following provision:

"Nothing contained in paragraph (3) of this subsection shall make lawful the exercise or the enforcement of any right or right of action described therein by a producer or distributor described in paragraph (2) against a person who is not a party to a contract or agreement described in said paragraph where the party seeking to exercise said right or right of action and the party against whom said right or right of action is sought to be exercised are both manufacturers, both producers, both wholesalers, both brokers, both factors or both retailers, or are persons, firms or corporations in competition with each other."

It is true that the statute as drawn without the addition of such a provision seems to permit a producer to do by indirection what he is forbidden to do directly. It would permit a producer to enter into a price fixing contract, which was valid because made with a vendee who was neither a competitor or in any of the other disfavored relationships with the producer, and, by virtue of that contract, to enforce against a person in competition with the producer a state-

2. See Case Note, 26 Geo.Wash.L.Rev. 469 (1958).

created right to fix prices. Under the terms of the statute a producer can thus, for example, by a contract with a non-competitor, create and enforce against a competitor a right to fix resale prices when a contract with the competitor giving the right to fix resale prices would have been invalid.

The Court of Appeals for the First Circuit in Esso Standard Oil Co. v. Secatore's, Inc., 246 F.2d 17, certiorari denied 355 U.S. 834, 78 S.Ct. 54, supra, seems to have assumed without discussion that section 45(a) has applied the same restrictions to the enforcement of a state-created right against a non-signer as the statute requires shall be applied to the enforcement of the price fixing contract with the signer.

Despite the loophole that the statute seems to contain if considered as written and despite the attitude of the Court of Appeals for the First Circuit, the engrafting of the provision which would be necessary to close the loophole seems to be a surgical operation too serious for the judiciary to perform upon a legislative act. I shall, therefore, consider only the relations of plaintiff with Cohen, the signer of the only price fixing contract before the court.

If plaintiff and Cohen were both manufacturers or both retailers, the contract with Cohen would not enjoy protection against antitrust laws. Protection afforded by subdivision (3) to state-created rights of action such as are sought to be enforced here is expressly limited to cases where the defendant sells at less' than the prices "prescribed in such contracts". If one of "such contracts" is unenforceable that contract cannot serve as support for protection to a right of action generated by the existence of the contract. If the contract between plaintiff and Cohen is one "between retailers" plaintiff's state-created right against non-signers like defendant is unenforceable.

That brings me to the fact controversy here. Defendant claims that protection against the federal antitrust laws is withheld from the state-created right to pursue non-signers because plaintiff is not only the manufacturer of its products but is also itself a retailer. If so, the contract with Cohen would be a contract between retailers. The Cohen contract would be vitiated and the protection accorded by section 45(a) (3) to rights against non-signers resulting from the contract would be withdrawn.

Plaintiff concedes that it is engaged to some extent in sales of fair traded goods to the ultimate consumers. It sells these to the General Electric Company and to an unspecified number of up-state New York hospitals. A more detailed abstract of the evidence on the subject follows.

Plaintiff has submitted copies of four price lists disseminated to druggists throughout the United States. The first is known as a "Retail Price Card" and lists various products of plaintiff and designates what is thereon stated to be the established fair trade minimum retail price for each. The second list is entitled "Retailer Cost Prices" and lists not only the minimum retail prices but also the cost to the retailer. The third is entitled "Supplement Retail Cost Prices" and lists products which, except in the case of three items, are not carried on the other two lists in that usually the third offers in packages of larger bulk the products carried on the other two lists. The statement is made on the third list that the items are of primary interest to hospitals and the medical profession. In the case of the three items which are enumerated on the other two lists minimum retail prices are given. Otherwise retail prices are neither fixed nor suggested. Fourth, and finally, there is the "Professional Price List" which bears the legend "The prices shown on this price list are suggested minimum prices for sales to members of the medical and dental professions". This list enumerates many of the items as to which minimum prices are fixed by the other lists.

On the face of these lists it would seem that plaintiff has made no attempt to fix or suggest resale prices on some of its packages and that, as to some of its packages, it has attempted to fix retail prices

except when sold to the medical or dental professions and then the attempt has been merely to suggest the retail price.

There is some indication in the affidavits that plaintiff does not attempt to fix the minimum resale prices in the case of "institutional sales" although it may be that all that is done is avoidance of the fixed minimum retail price by billing the goods to the physician in charge of the medical affairs of the institution and thus bringing the sale within the class where the minimum prices are merely suggested.

Plaintiff seems to assume that a manufacturer can take advantage of the Fair Trade law without fair trading all of its products and, indeed, that it may do so without fair trading all retail sales of a given product but may exempt, for example, sales to physicians and dentists.

I think that plaintiff is justified in these assumptions, although defendant protests bitterly at what seems to be discrimination in fixing prices for sales to the general public but leaving sales to physicians and dentists practically at large.

The real difficulty in the case arises from the admission of plaintiff that it does sell its entire line, including both the articles which are not fair traded and those which are, to hospitals in up-state New York and to the General Electric Company in Schenectady for use in its dispensaries.

The statute forbids price fixing contracts between retailers and between persons in competition with one another. There is no evidence that plaintiff and Cohen are in actual competition with one another. If the contract is a forbidden one it must be so because plaintiff and Cohen are both retailers. That does not mean that the contract would be allowable if both were wholesalers; such contracts are forbidden too. The vice would consist not in their being wholesalers but in their being in the same kind of business and thus in potential competition with one another. Our problem then is

to determine whether plaintiff and Cohen are in the same kind of business. Are they both retailers?

The record here is very meagre. As I have said, there is no evidence that plaintiff and Cohen are in actual competition. From the fact that the contract calls Cohen a retailer and recites that he is engaged in the sale of plaintiff's line and the fact that that line consists of surgical dressings, baby products, elastic products, ointments and other related articles, I gather that Cohen runs a drug store. The question, therefore, is whether plaintiff, by its sales to General Electric and to up-state hospitals has become a retailer in the sense of becoming a potential competitor of the ordinary retail drug store. To answer that question one would have to know the amount and content of the sales to General Electric, the amount and content of the sales to hospitals and whether retail drug stores customarily made sales of similar amount and content to similar corporations and institutions. Since those questions are not answered by the record the disposition of this motion depends upon the answer to the question as to who has the burden of proof. Paragraph (5) of subsection (a) of section 45 of title 15 of the United States Code above quoted, which provides that nothing contained in paragraph (2) shall make lawful contracts between retailers, is thus expressed as an exception to the validating provision of the statute and therefore the party relying on it has the burden of proof that he comes within it. Walling v. Reid, 8 Cir., 139 F.2d 323.

Since defendant has not shown that plaintiff and Cohen are both retailers or are in actual competition, those grounds are eliminated as a basis for denial of the motion for a preliminary injunction. Defendant's further point that plaintiff has price fixing agreements with wholesalers is completely unsupported.

The motion must be granted without prejudice to a motion to vacate the injunction based by defendant upon new or additional facts such as the extent and

nature of the business of Cohen or other retailers with whom plaintiff has made price fixing agreements, the extent and nature of plaintiff's sales to the General Electric Company and to up-state hospitals and the extent and nature of sales customarily made by retail drug stores to similar corporations and institutions.

The decision of Judge Edelstein in Johnson & Johnson v. Apollo Sales, Inc., D.C., 192 F.Supp. 779, is urged upon me by plaintiff but the fact case made there differs from that in the instant case and may well differ from that which may be made on a motion to vacate the preliminary injunction hereby awarded.

Settle on notice an order containing findings and conclusions and provision for a bond in an amount fixed thereby.