JOHNSON & JOHNSON, Plaintiff,
v.
AVENUE MERCHANDISE CORP.,
Defendant.

JOHNSON & JOHNSON, Plaintiff,
v.
MILSHAP DRUG SALES CORP.,
Defendant.

JOHNSON & JOHNSON, Plaintiff,
v.
RITE PRICE MERCHANDISE CORP.,
Defendant.

JOHNSON & JOHNSON, Plaintiff,
v.
DEAL RITE MERCHANDISE CORP.,
Defendant.

United States District Court
S. D. New York.
April 7, 1961.

Rogers, Hoge & Hills, New York City,
George M. Chapman, C. Donald Mohr,
New York City, of counsel, for plaintiff.

W. Edward Woods, New York City,
for defendants.

FREDERICK van PELT BRYAN,
District Judge.

Plaintiff, a large producer of surgical dressings, elastic products, ointments and related articles, sues to restrain the respective defendants, who operate retail drug or variety stores which carry plaintiff's trademark products, from selling such products at less than established fair trade prices in violation of the Feld-Crawford Act (New York General Business Law, McKinney's Consol. Laws, c. 20, § 369–a et seq.). It now moves for a preliminary injunction in each of these actions.

Plaintiff is a New Jersey corporation with its principal place of business there. Defendants in each of these actions are New York corporations operating retail stores in New York. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

All of these motions have common questions of law and fact and by agreement of counsel for all parties the decision in the Avenue Merchandise case will determine the other cases also.

The facts in the Avenue Merchandise case are substantially undisputed. As part of its general marketing program plaintiff has numerous contracts with retailers in New York which obligate the retailers to sell plaintiff's products at prices not lower than those established by the plaintiff, that is, its "fair trade" prices. A representative contract between plaintiff and Cohen, a retailer in Levittown, New York, is in the record. The defendant itself has never signed such an agreement.

Under the Feld-Crawford Act non-signatory retailers are bound to observe retail prices established by contract.[1]

It is not seriously disputed that defendant is selling plaintiff's trademark products at less than their established prices. Moreover, it appears that plaintiff has made and is continuing to make reasonable and diligent efforts to enforce its fair price structure. The defendant's continued disregard for plaintiff's rights under the Feld-Crawford Act is undermining plaintiff's fair trade price structure and unless restrained such conduct may lead to the destruction of plaintiff's fair trade system and the impairment of its good will. The relief which plaintiff seeks is for the sole purpose of enforcing its fair trade rights. The granting of a preliminary injunction which restrains defendant only from underselling plaintiff's fair trade prices and not from selling plaintiff's products could impose no undue hardship on defendant.

Thus, it would appear that plaintiff has established its right to a preliminary injunction, provided it is entitled to maintain this action.[2]

Defendant contends, however, that the relief must be denied because it is not permitted by the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, 26 Stat. 209, as amended by the Miller-Tydings Act, 15 U.S.C.A. § 1, 50 Stat. 693, and the McGuire Act, 15 U.S.C.A. § 45, 66 Stat. 632.

The Sherman Act, as originally drawn, forbade resale price maintenance contracts such as that between plaintiff and Cohen. See, e. g., United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024; Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502. The Miller-Tydings Act, passed in 1937, amended the Sherman Act to permit such contracts where they were legal under state law, provided that they were not contracts " * * * between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition

---

1. New York General Business Law, § 369–b:
   "*Unfair competition defined and made actionable.*
   "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

2. Numerous preliminary injunctions have been granted in plaintiff's favor on similar facts in this court. See Johnson & Johnson v. Wagonfeld, 60 Civ. 1074, July 22, 1960, Cashin, J.; Johnson & Johnson v. Imperial Drug Exchange, Inc., 60 Civ. 1067 and Johnson & Johnson v. Dumont J. P. Drug Corp., 60 Civ. 4116, November 15, 1960, Bicks, J.; Johnson & Johnson v. Park Row Merchandise, Inc., 60 Civ. 1392, November 23, 1960, MacMahon, J.; Johnson & Johnson v. Bellmore Sales Corp., 60 Civ. 1395, November 4, 1960, Palmieri, J.; Johnson & Johnson v. Charlie's Drugs & Sundries, Inc., 60 Civ. 1394, Johnson & Johnson v. Aaronoff Sales Corp., 60 Civ. 1073, and Johnson & Johnson v. Cohen, 60 Civ. 1068, December 30, 1960, McGohey, J.

with each other." [3]  It did not, however, exempt from the Sherman Act actions brought against non-signers, such as that at bar, even where such actions were authorized by state law. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035.

The McGuire Act,[4] passed shortly after the Schwegmann case, did permit such actions where authorized by state law, and where they were also not based on contracts " *  *  * between manufacturers, or between producers, or between wholesalers, or between brokers, or be-

3. 15 U.S.C.A. § 1

"Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty.

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: *Provided*, That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45 of this title: *Provided further*, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

4. 15 U.S.C.A. § 45

"Unfair methods of competition unlawful; prevention by Commission.

"(a) Declaration of unlawfulness; power to prohibit unfair practices.

"(1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

"(2) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stip-

ulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale.

"(3) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby.

"(4) Neither the making of contracts or agreements as described in paragraph (2) of this subsection, nor the exercise or enforcement of any right or right of action as described in paragraph (3) of this subsection shall constitute an unlawful burden or restraint upon, or interference with, commerce.

"(5) Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

tween factors, or between retailers, or between persons, firms, or corporations in competition with each other."

The defendant contends that plaintiff's contract with Cohen is a contract "between retailers" forbidden by the Sherman Act, and specifically excluded from the exemptions provided by the Miller-Tydings Act and the McGuire Act.[5] It bases this contention primarily on certain sales made by plaintiff in this state.

The facts concerning these alleged activities are not in serious dispute.

Plaintiff sells its products, in lots of $50 or more, directly to an infirmary operated by the General Electric Company at its Schenectady, N. Y., plant. These products are used by General Electric to treat employees injured at the plant. The products are used on the premises and are not resold. General Electric is the only industrial customer of Johnson & Johnson in the entire state. Johnson & Johnson will not sell to other industrial accounts even though they do not resell its products and directs such potential customers to retail or wholesale outlets. It sells directly to General Electric only at General Electric's insistence and even then, only in quantities of $50 or more.

The defendant argues that these sales to General Electric in Schenectady, N. Y., make Johnson & Johnson a "retailer" and that therefore its contracts with Cohen and other retailers are "contracts between retailers" specifically excepted from paragraph (5) of the McGuire Act and are thus forbidden by the Sherman Act.

Johnson & Johnson counters by urging, first, that even if it is a "retailer", it does not compete with the defendant and therefore does not come within paragraph (5) of the McGuire Act, and, second, that in any event it is not a "retailer" within the meaning of paragraph (5).[6]

At the outset it should be noted that, by its terms, paragraph (5) of the McGuire Act refers only to contracts or agreements. The only contract or agreement before me here is the one with Cohen, the Levittown retailer. Whether plaintiff competes with Cohen is at least as relevant as whether it competes with defendant. Cohen operates a retail drug store in Levittown, N. Y.; the defendant operates a store in New York City; the General Electric infirmary, claimed to be an ultimate consumer, is in Schenectady, N. Y., several hundred miles away in an entirely different trading area. It is plain that neither Cohen nor the defendant compete with Johnson & Johnson for the sales to General Electric's Schenectady plant.

However, it is by no means clear that if Johnson & Johnson is a "retailer," it need be in competition with Cohen or the defendant in order to come within the orbit of paragraph (5). Stated another way, the issue is whether paragraph (5) refers to all "retailers", or only to "retailers * * * in competition with each other." Plaintiff reads the statutory phrase "in competition with each other" to modify the term "retailer". Defendant contends that the phrase merely modifies "persons, firms, or corporations," and that it is immaterial whether the retailers involved are or are not in competition with each other.

As a matter of grammar, either interpretation is arguable. See Note, Fair Trade Agreements Between Competitors, 1 CCH Trade Regulation Reporter ¶ 3100, where the ambiguity of the statutory language is acknowledged. Also, compare Johnson & Johnson v. Janel Sales Corp., D.C.S.D.N.Y., 192 F.Supp. 780, and Esso Standard Oil Co. v. Secatore's, Inc., 1 Cir., 246 F.2d 17, 24, certiorari denied 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46, holding that competition is immaterial as long as the parties to the

---

5. See, also, New York General Business Law, § 369–c.

6. For purposes of this discussion I shall assume, as both parties do, that the commerce here involved is interstate and hence governed by the Sherman Act, the Miller-Tydings Act and the McGuire Act where those statutes are applicable.

stipulated resale price contract are both in the same category, e. g., both retailers, with Johnson & Johnson v. Apollo Sales, Inc., D.C.S.D.N.Y., 192 F.Supp. 779, memorandum decision February 1, 1961, which held that parties in the same category were exempted unless they were in competition with one another.

█ In my view the sentence should be construed to mean that if the parties are both in one of the specific categories listed, that is to say, are both manufacturers, both producers, both wholesalers, both brokers, both factors, or both retailers, the question of whether or not they are in competition is immaterial and actions based on contracts between them do not fall within the statutory exemption. This view is supported by an examination of the legislative history of the McGuire Act.

Paragraph (5) of the McGuire Act uses language identical in every respect to the language used in the same connection in the Miller-Tydings Act. Be-

cause of this, scant attention was given to paragraph (5), when the McGuire Act was considered, and Congress devoted itself almost entirely to the more controversial part of the Act—the nonsigner provision. What mention is made of paragraph (5) in the debates on the McGuire Act seems on the surface to support plaintiff's construction.[7] However, Congress was absorbed in the nonsigner provisions of the McGuire Act and showed little, if any, concern about the language or effect of paragraph (5). The remarks quoted in the footnote were made almost parenthetically and are not controlling on the question.

Far more illuminating are the debates on the Miller-Tydings Act from which the identical language and punctuation in the McGuire Act was taken. By adapting such identical language and punctuation Congress must have intended the same meaning to follow. Indeed, the McGuire Act is an amendment of the Miller-Tydings Act although it took the form of an amendment to the Feder-

---

7. See the following excerpts from Debates on H.R. 5767, 82nd Cong., 2d Sess., 1952.

"Mr. Madden: * * * However, the bill would not make legal such contracts between manufacturers, producers, and certain other specified persons in competition with each other * * *." 98 Cong.Rec. 4896.

"Mr. Dolliver: * * * In terms of its practical effects, vertical resale price maintenance through the State fair-trade laws has had a salutary effect upon the economy. This is the exact opposite of the destructive consequences of horizontal price-fixing. Indeed, the antitrust prohibition against horizontal price fixing, as a means of fostering monopolies and thereby restricting full and open competition, is specifically continued by every State fair-trade act, by the Miller-Tydings Act and by the McGuire bill, H.R. 5767. The latter measure now before this House, contains in this connection the following provision:

"(5) Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or be-

tween wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms or corporations in competition with each other."

"Horizontal price fixing by agreements between competitors is prohibited because it stifles and restricts free and open competition and invariably results in the creation and growth of monopolies." 98 Cong.Rec. 4902.

"Mr. Hill: * * * As for the possibility of wholesalers agreeing to establish a uniform price in their respective contracts, both the Federal antitrust laws and the State fair-trade acts specifically prohibit any such agreement. Such agreements would constitute collusion of a horizontal nature among competitors and are barred both by the Federal and State statutes involved." 98 Cong.Rec. 4907.

"Mr. Patman: * * * Horizontal price fixing is essentially an agreement among those who are on the same level in the distributive process, be they manufacturers or distributors, not to compete. Vertical resale price maintenance takes place between a manufacturer and his distributors, who are not on the same level in the distributive process and thus, of course, are not competitors." 98 Cong.Rec. 4951.

al Trade Commission Act. Logically speaking, the McGuire Act might have adopted by reference the language of the Miller-Tydings Act pertaining to contracts between wholesalers, producers, retailers, etc. See generally, 98 Cong. Rec. 4899. Instead the McGuire Act merely repeated such language.

Thus, the meaning of which Congress intended this language to have in the Miller-Tydings Act is controlling here. The proviso in question was introduced by Senator Tydings as an amendment to the Miller-Tydings bill, after it had already passed the House. See 81 Cong. Rec. 7487. Consequently neither the Committee Reports nor the House Debates can shed any light on this provision. The Senate Debates, however, are illuminating and resolve any doubts on the subject.

The proviso was added to the bill from the floor by Senator Tydings during the Senate Debate. Senator Schwellenbach inquired about the meaning of the amendment and the following exchange took place:

"Schwellenbach: Will the Senator explain just what the amendment does as compared to what is in the bill."

"Tydings: * * * The amendment [paragraph (5)] provides that nothing in this particular provision shall permit manufacturers to combine with manufacturers, wholesalers with wholesalers, factors with factors, or retailers with retailers. That is made absolutely certain. I do not think it was necessary, but I was glad to put into place the matter beyond the peradventure of a doubt." 81 Cong.Rec. 7496.

Senator Tydings did not suggest that the amendment would permit manufacturers to combine with manufacturers, wholesalers with wholesalers, or retailers with retailers, if only they did not compete. On the contrary, he emphasized that it was "absolutely certain" that *"nothing"*,—neither lack of competition, nor any other circumstance—would permit them to combine.

At other points in the debate Senator Tydings was equally unequivocal. Only a page earlier he stated:

"There is not a line in the amendment which would permit manufacturers to combine with other manufacturers, wholesalers with other wholesalers, or retailers with other retailers." 81 Cong.Rec. 7495.

Yet a third time he restated his understanding of the meaning of his own amendment:

"We are trying to decentralize fair trade practices rather than to have the matter dealt with under the old N.R.A. which tried to put one blanket over the entire country, and which, in my judgment allowed manufacturers to combine with other manufacturers, wholesalers with wholesalers, and retailers with retailers. Under the pending amendment it is illegal for manufacturers to combine, wholesalers to combine, or retailers to combine." 81 Cong.Rec. 7496.

These explanations made by the author of the amendment and focused directly on the problem at bar, are most persuasive. Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 394–395, 71 S.Ct. 745, 95 L.Ed. 1035. Not only are they the most authoritative guides to the meaning of paragraph (5) of the Miller-Tydings Act, they seem to be the only guides. The McGuire Act, using identical language, in an identical context, must be given the same meaning.

Hence, I hold that in order for a retailer to fall within the ambit of paragraph (5) of the McGuire Act it is unnecessary for him to be in competition with another retailer.[8]

8. New York General Business Law, § 369-c reads as follows: "This article shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices."

■ While Section 369–c seems by its terms similarly to restrict resale price maintenance contracts, the New York courts have apparently held that retailers who have contracts with other retailers may avail themselves of the remedies provided by the statute unless they are in competition with those with whom they have contracted. See, e. g., Revlon, Inc. v. Wagonfeld, New York Sup.Ct., 19 Misc.2d 546, 187 N.Y.S.2d 945, affirmed as modified 1st Dept., 11 A.D.2d 1008, 206 N.Y.S.2d 254; Revlon, Inc. v. Janel Sales Corp., New York Sup.Ct., 198 N.Y.S.2d 359. The construction of the New York statute by the New York courts cannot affect the case at bar since, as I have held, Congress has not exempted any contracts between retailers from the operation of the antitrust laws, whether or not they are in competition. The sole question then is whether Johnson & Johnson is a "retailer," within the meaning of paragraph (5) of the McGuire Act.

Neither the legislative history of the McGuire Act, nor of the Miller-Tydings Act throws any light on the meaning of the word "retailer" as used in the McGuire Act. It seems to have been assumed that "a retailer is a retailer is a retailer". Undoubtedly, Congress meant the word to have its "normal and customary meaning", Schwegmann Bros. v. Calvert Distillers Corp., supra, 341 U.S. at page 388, 71 S.Ct. at page 747, but its "normal and customary meaning" is not free from doubt.

The defendant argues that in selling to General Electric plaintiff is selling to an "ultimate consumer." It then concludes that sales of goods in minimum quantities of $50 to a single "ultimate consumer" makes Johnson & Johnson a retailer.

■ It seems to me that it is at least highly doubtful that General Electric can be considered an "ultimate consumer" of plaintiff's products. But even if General Electric is an ultimate consumer, in my view the sale of bandages and similar products, in minimum quantities of $50, to a single ultimate consumer, does not make Johnson & Johnson a retailer within the meaning of paragraph (5) of the McGuire Act.

In Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 421, 90 L.Ed. 383, the Supreme Court had occasion to determine the meaning of the phrase "retail or service establishment" as that word is used in the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (2). In that case Roland sold motors which were not purchased for resale, but were to be used or "ultimately consumed" by Roland's customers. Roland argued that it was therefore a retailer because it was selling to "ultimate consumers." The Supreme Court unanimously rejected this argument and held that the commercial and industrial concerns to whom Roland sold could not legitimately be considered "retail customers". 326 U.S. at page 678, 66 S.Ct. at page 423.

In the case at bar defendant makes the argument which was unanimously rejected by the Supreme Court in the Roland case. Goods and supplies purchased by General Electric are not "ultimately consumed" by General Electric but go into the process by which the products which it eventually sells are manufactured. Thus the bandages and similar surgical supplies bought by General Electric are merely part of the cost of manufacturing electrical appliances and numerous other General Electric products. The Supreme Court in the Roland case recognized this crucial difference between home or personal consumption, and consumption for business or industrial purposes. It unanimously and unequivocally held that sales to industrial concerns cannot be considered retail sales as that term is understood by businessmen, economists, or the general public. See authorities relied on at 326 U.S. 674–675, 66 S.Ct. 421. See, also, Upjohn Co. v. Liberty Drug Co., Inc., D.C.S.D.N.Y., 193 F.Supp. 701.

Even if General Electric could be considered an ultimate consumer it does not follow that sales of $50 or more to one ultimate consumer make Johnson & Johnson a retailer. "One swallow

maketh not summer", nor does one ultimate consumer make a retailer. Indeed, the standard dictionaries, both legal and general, consider the primary characteristic of a retailer to be the business of selling goods in small quantities. The fact that a retailer sells to "ultimate consumers" is considered purely incidental. See, e. g., Black, Law Dictionary, (4 ed. 1951); Bouvier, Law Dictionary (8 ed. 1914); Webster, New International Dictionary, Unabridged (2 ed. 1957); Shorter Oxford English Dictionary (3 ed. 1955). Johnson & Johnson is not engaged in this kind of business.

The fact that it also sells to two upstate hospitals in similar quantities and under comparable circumstances does not make it a retailer either. It may be noted in this connection that the defendant makes no claim that it sells or could sell to these hospitals.

Defendant contends that United States v. McKesson & Robbins, 351 U.S. 305, 76 S.Ct. 937, 939, 100 L.Ed. 1209, requires a different conclusion. There the Government attacked fair trade contracts as being "contracts 'between wholesalers'" which violated the antitrust laws. McKesson & Robbins contended that it could not be considered a wholesaler within the meaning of paragraph (5) of the McGuire Act because it was also a manufacturer. The Supreme Court held that since McKesson was the largest drug wholesaler in the country, and directly competed with numerous other drug wholesalers, it could not escape the consequences of being a wholesaler merely because it also had a manufacturing division. Plainly the McKesson case is not apposite here.

I therefore hold that Johnson & Johnson is not a retailer within the meaning of paragraph (5) of the McGuire Act. It therefore comes within the exemption from the Sherman Act granted by the McGuire Act and may maintain this action.

■ Plaintiff has established its right to a preliminary injunction since the defendant's acts are in clear violation of Section 369–b of the New York General Business Law, and unless restrained pending trial will result in irreparable injury to the plaintiff and may lead to the destruction of its fair trade structure and the impairment of its good will. Plaintiff's motion for a preliminary injunction in each of these actions is granted.

The foregoing constitute my findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P. 28 U.S.C. Plaintiff will post security of $500 in each of the pending actions, pursuant to Rule 65(c), F.R.C.P., as a condition of the grant of injunctive relief.

Settle order on notice conforming to Rule 65(d), F.R.C.P.