**ESSO STANDARD OIL COMPANY,**
**Plaintiff, Appellant,**
v.
**SECATORE'S, Inc., Defendant, Appellee.**
**No. 5188.**

United States Court of Appeals
First Circuit.
May 2, 1957.
Rehearing Denied June 14, 1957.

Robert W. Meserve, Boston, Mass., with whom Charles W. Bartlett, John R. Hally, Austin Broadhurst, Nutter, McClennen & Fish and Ely, Bartlett, Thompson & Brown, Boston, Mass., were on brief, for appellant.

Albert U. Rosa, Boston, Mass., for appellee.

Before WOODBURY and HARTIGAN, Circuit Judges, and ALDRICH, District Judge.

**WOODBURY, Circuit Judge.**

■ This appeal is from a judgment dismissing a complaint in a suit brought under federal diversity jurisdiction to enjoin a "non-signer" retailer from selling the plaintiff's *Esso* and *Esso Extra* gasolines in Massachusetts for less than the minimum retail prices established therefor in fair-trade agreements entered into by the plaintiff with third party retailers pursuant to the Massachusetts Fair Trade Law, Mass. G.L. c. 93, §§ 14A, 14B, quoted in material part in the margin.[1]

The plaintiff, Esso Standard Oil Company, is a Delaware corporation engaged in the production, distribution, and marketing of gasoline and other petroleum products throughout the United States and in foreign countries. In September, 1953, it entered into a three-year contract to take effect on May 1, 1954, with the defendant, Secatore's, Inc., a Massachusetts corporation operating two large gasoline service stations in East Boston, Massachusetts, whereby it agreed to sell to the defendant and the defendant agreed to buy from the plaintiff, all of the buyer's requirements of *Esso* and *Esso Extra* gasolines at the seller's posted tank wagon prices "in effect at the time and place from which delivery is made."

At the time when this contract was made the plaintiff had not entered into any fair trade agreements with anyone in Massachusetts. On August 7 and 8, 1956, however, while its contract with the defendant was in force, the plaintiff negotiated resale price maintenance agreements with several of its retail dealers in Massachusetts fixing minimum retail prices for its *Esso* and *Esso Extra* gasolines. The defendant was promptly notified of these agreements and directed to observe the minimum prices therein established. It refused to do so and asserts the right to persist in its refusal unless the court orders it to comply.

It is obvious, and indeed it is freely conceded, that the plaintiff is engaged in interstate commerce. Thus its minimum price fixing agreements with its retailers, even though authorized by state law, are illegal *per se* under federal antitrust legislation unless exempted therefrom by the Miller-Tydings amendment, 50 Stat. 693 (1937), of § 1 of the Sherman Act and the McGuire amendment, 66 Stat. 632 (1952), of § 5(a) of

---

1. "Section 14A. No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, or the vending equipment from which said commodity is sold to consumer bears, the trade-mark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the commonwealth by reason of any of the following provisions which may be contained in such contract:

"(1) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(2) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee.

\* \* \* \* \*

"Section 14B. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the preceding section, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is hereby declared to constitute unfair competition and to be actionable at the suit of any person damaged thereby."

the Federal Trade Commission Act, 15 U.S.C.A. §§ 1, 45(a).[2] Schwegmann Bros. v. Calvert Corp., 1951, 341 U.S. 384, 386, 11 S.Ct. 745, 95 L.Ed. 1035; United States v. McKesson & Robbins, Inc., 1956, 351 U.S. 305, 310, 311, 76 S.Ct. 937, 100 L.Ed. 1209, and cases cited. The Miller-Tydings amendment, and in almost identical language the McGuire amendment also, provide in material part that nothing in federal antitrust legislation "shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions" under local law. But both amendatory acts provide that the grant of immunity from federal condemnation "shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

The critical, and as we see it the controlling, question before the court below and before us is whether the plaintiff and defendant are "corporations in competition with each other."

With its complaint the plaintiff filed a motion for a temporary injunction and the court below held a hearing on the motion. At that hearing the defendant stipulated that practically all of the allegations of fact in the complaint could be accepted as true and made three points in defense. It asserted, first, that the

plaintiff's contract with the defendant barred the relief sought, second, that the plaintiff was "in competition" with the defendant and its other retailers, and, third, that the plaintiff had been lax in requiring its other retailers to observe its fair trade agreements. On the basis of the evidence introduced at this hearing the court in a carefully prepared opinion rejected all of these defenses and granted the plaintiff the temporary relief for which it asked.

Later on, however, after a hearing on the merits, the court below found on the basis of further evidence that the plaintiff was "in competition" with the defendant and its other retailers. Thus it concluded that the plaintiff's price maintenance agreements were not within the exemption of the Miller-Tydings and McGuire amendments and so were illegal under federal antitrust legislation. Wherefore it vacated forthwith the temporary injunction it had granted and entered the judgment dismissing the plaintiff's complaint which is before us on this appeal.

The plaintiff-appellant not only supplies its gasolines to its retail dealers who in turn sell to ultimate consumers at their filling stations, but it also sells direct to some ultimate customers. It has several hundred so-called "commercial accounts" in Massachusetts, all of whom use a substantial quantity of gasoline per year. These for the most part are operators of fleets of trucks or taxicabs, although some of them also use gasoline for lift-trucks and other off-the-road vehicles. In many cases the plaintiff at its own expense provides, installs and maintains underground tanks and pumps on the respective premises of these customers and it delivers gasoline to them from its bulk plants by tank truck in quantities never less than 300 gallons except in emergency. It charges them one cent per gallon above its posted

2. The McGuire amendment not only reaffirmed the policy of the Miller-Tydings amendment, but it also eliminated the restrictive effect of the Supreme Court's decision in the Schwegmann Bros. case by exempting from the antitrust laws minimum price-fixing agreements made binding by state law on "non-signers" of such agreements.

tank wagon price. There is no set minimum annual consumption required to qualify for a commercial account, but the plaintiff will sell to any such account on which it thinks it can make a profit. Some of these accounts use less than 5,000 gallons annually, but most of them use much more. It actively solicits this type of business and in 1955, the last year for which complete figures were available, it amounted in Massachusetts to over $3,000,000 per year, or about 10% of the appellant's gross local business.

The defendant-appellee also does a substantial annual business at its filling stations with operators of fleets of motor vehicles. There is no evidence of the dollar volume of this business but in 1955 it had 45 accounts using over 5,000 gallons per year, so it clearly is not inconsiderable. It services these accounts at its filling stations in the customary way that filling stations generally service their customers. That is to say, the fleet operators' trucks or taxicabs are driven to the defendant's station and there the defendant's employees fill the vehicles' tanks and perform the incidental services ordinarily performed by filling station attendants.

Thus, as the District Court found, there is most certainly an area in which the plaintiff and the defendant are in competition with each other. While their competitive techniques are different, one gives less service for a lower price and the other more service for a higher price, the fact remains that each in its own way is striving for the business of supplying gasoline directly to those who operate fleets of motor vehicles. And the area of their competition is not so small that it can be disregarded by application of the de minimis maxim. Nevertheless the plaintiff-appellant contends that its competition with the defendant-appellee does not exclude application of the exculpatory provisions of the Miller-Tydings and McGuire Acts because their competition is not on the same "functional level." It argues that by application of the rule of ejusdem gen-

eris the general language of the concluding phrase, "persons, firms, or corporations in competition with each other," is controlled by the preceding reference to six specific categories of competitors, and that therefore the phrase alludes only to retailers, wholesalers, etc., who go under another name in commercial jargon, as perhaps "jobbers" or "agents." Alternatively it argues that in context the final phrase refers only to the type of competition which occurs between retailer and retailer or between wholesaler and wholesaler, and so forth, which it asserts is competition in serving the same "function." In short, by putting stress on "function" the plaintiff-appellant seeks to distinguish competition in rendering the same service from competition for the same customers.

We think these arguments must be rejected on the language and rationale of the Supreme Court in United States v. McKesson & Robbins, Inc., 1956, 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209. The defendant in that case manufactured a line of drug products which it marketed under its own brand name and it also acted as a wholesaler of its own and other commodities sold in drugstores. It entered into resale price maintenance agreements with respect to its own branded merchandise with other wholesalers of like products and the United States proceeded against it under § 4 of the Sherman Act for injunctive relief asserting that the agreements constituted an illegal restraint of trade. McKesson & Robbins contended in defense that it had made the price maintenance agreements in its role of manufacturer, and therefore the agreements were not "between wholesalers."

The Supreme Court, refusing to compartmentalize the defendant's business, rejected this defense. It might, perhaps, have rested its decision solely on the proposition that McKesson & Robbins was a wholesaler because it did "wholesale" selling or, alternatively, that it was more a wholesaler than a manufacturer, and hence its price maintenance agreements were "between wholesalers." But

it did not so limit its rationale. It said, 351 U.S. at pages 312–313, 76 S.Ct. at page 942:

"Any doubts which might otherwise be raised as to the propriety of considering a manufacturer-wholesaler as a 'wholesaler' are dispelled by the last phrase of the proviso in question, which continues the proscription against price-fixing agreements 'between persons, firms, or corporations in competition with each other.' Congress thus made as plain as words can make it that, without regard to categories or labels, the crucial inquiry is whether the contracting parties compete with each other. If they do, the Miller-Tydings and McGuire Acts do not permit them to fix resale prices."

It is true that the Court then went on to say that it had been said in Schwegmann Bros. v. Calvert Corp., 1951, 341 U.S. 384, 389, 71 S.Ct. 745, 95 L.Ed. 1035, that the statutory language " 'expressly continues the prohibitions of the Sherman Act against "horizontal" price fixing by those in competition with each other at the same functional level,' " and followed this with the statement: "Since appellee competes 'at the same functional level' with each of the 94 wholesalers with whom it has price-fixing agreements, the proviso prevents these agreements from falling within the statutory exemption." And 315 U.S. on page 315, 76 S.Ct. on page 943, 100 L.Ed. 1209, of its McKesson opinion the Court said that "the language of the proviso in question is unambiguous" and "excludes from the exemption from the *per se* rule of illegality resale price maintenance contracts between firms competing on the same functional level."

Thus the Supreme Court in the McKesson & Robbins case, as in the Schwegmann Bros. case, made several direct references to competition "on the same functional level." But from reading the opinions in both cases in their entireties we think the Supreme Court in each instance was using the phrase in a descriptive rather than a restrictive

sense. The word "functional" itself is not precise in meaning and it does not seem to have any clear significance in either case. In neither case is the word defined and it may well have been used in contradistinction to "categories or labels" to broaden the construction of "competition" beyond that between businesses of the same nomenclature. Indeed, this interpretation is in keeping with the admonition, to be considered more fully later, that the exemption accorded by Congress in the Miller-Tydings and McGuire Acts from the ban of the Antitrust Acts is to be narrowly construed. As we read the long quotation from the McKesson & Robbins case above, "categories our labels" are not the "crucial inquiry." What is determinative is "whether the contracting parties compete with each other." The parties before us on this appeal, as we have shown, are in a real sense competing with each other for the business of a not insubstantial class or type of consumers of gasoline. Although their techniques of doing business differ, they are nonetheless competitors, and this excludes application of the exemption from antitrust legislation.

In short, we think the Antitrust Acts are not so much concerned with the preservation of competition in performing given functions as such as they are with preserving to consumers the benefits which result from competition between different businesses to serve a particular consumer need. And we do not think that Congress in the Miller-Tydings and McGuire Acts intended to limit or restrict full achievement of that major concern.

But the appellant contends that even though there is competition between the parties to a limited extent, nevertheless it is entitled to injunctive relief as to the separate class of business for which it and the defendant do not actually or potentially compete. That is to say, it contends that it is entitled to enforce resale price maintenance with respect to that separable portion of the defendant's trade as to which it does not compete,

i. e., ordinary retail sales in relatively small amounts to the ordinary run of motorists.

The appellant did not make this suggestion in the court below. Thus there may well be unexplored practical difficulties, if not difficulties under local statutes, which would render it inexpedient to grant the partial relief asked for. This does not prevent us from considering the suggestion, however, for we could remand for further hearing. But we shall not take that course for we do not think the statute permits the partial relief requested.

No authority is cited for a grant of limited relief, and the possibility of granting such relief is not mentioned in any case which has come to our attention. Nevertheless, it can be said that the Miller-Tydings and McGuire amendments do not specifically forbid it, and in the many situations in which wholesalers and retailers in general are in competition for large accounts, to allow partial relief of the sort requested would effectuate the avowed purpose of the amendment to permit price maintenance as to trade marked or brand named goods in order to prevent destructive cutthroat competition and to cure the evils attendant upon the use by some retailers of "loss leaders." We cannot accept the argument, however, in view of the strictness with which the amendments were construed in the Schwegmann Bros. case, and also in the McKesson & Robbins case, wherein at the conclusion of the Court's opinion, 351 U.S. on page 316, 76 S.Ct. on page 943, 100 L.Ed. 1209, it is said: "Congress has marked the limitations beyond which price fixing cannot go. We are not only bound by those limitations but we are bound to construe them strictly, since resale price maintenance is a privilege restrictive of a free economy." Our conclusion, therefore, is that any competition for customers is an absolute bar to price maintenance agreements between the competitors.

This conclusion renders unnecessary any consideration of the other defenses raised below and of the additional defense suggested on this appeal that gasoline cannot be fair-traded under the Miller-Tydings and McGuire Acts because it is not "a commodity which bears, or the label or container of which bears, the trademark, brand, or name" of its producer.

A judgment will be entered affirming the judgment of the District Court.

ALDRICH, District Judge, concurs in the result.

### On Petition for Rehearing

WOODBURY, Circuit Judge.

In the majority opinion of the court and also in Judge ALDRICH'S concurring opinion it is stated in substance that the plaintiff-appellant did not ask the court below for injunctive relief limited to the separate class of business for which it and the defendant-appellee were not in either actual or potential competition. On this petition for rehearing the plaintiff-appellant asserts that actually it did ask the court below for such limited relief and that the court denied it, and it points to the typewritten transcript to prove its assertion. For relief it asks us to amend our opinions to conform to the fact thus established and for leave to add to the record appendix to its brief by printing as a supplement thereto the portions of the typewritten record on which it relies.

Our Rule 24(1), 28 U.S.C.A., permitting appellants to proceed on record appendices to their briefs requires that relevant docket entries, the charge or judgment below, and certain other matters, be printed therein, and also "such other parts of the record, material to the questions presented, as the appellant or petitioner deems it essential for the judges of the court to read in order to decide those questions." Certainly whether the plaintiff-appellant asked the District Court for the limited injunctive relief which is asserted on appeal it was entitled to is material. The plaintiff-appellant should, therefore have printed in its original appendix the matter which it now asks for leave to print in a sup-

plement. While we are free if we wish to scan the original record made in the court below, we are not under any obligation to thumb through that often voluminous record to see whether an appellant has failed to print in the appendix to his brief some part of it material to the questions he presents to us on appeal. Were that our duty the appendix system would have little or no point. It is the appellant's duty to print in his appendix the parts of the record essential for us to read in order to decide the questions he presents, and if he fails to do so, he runs the risk of coming before this court on an inadequate record on appeal.

However, we are disposed to be lenient in this particular case, for even though we did not accord controlling significance to the appellant's failure to ask the court below for limited injunctive relief, which we assumed from the record appendix to its brief to be the fact, we nevertheless see no reason why the relief for which it asks in this petition for rehearing should not be granted to the end that the actual fact may appear on the records of this court.

Leave is granted to the plaintiff-appellant to file a supplemental record appendix to its brief in the form submitted with its petition for rehearing, and an order will be entered denying the petition for rehearing.

ALDRICH, District Judge (concurring in the result).

I concur in Judge WOODBURY'S opinion on rehearing. However, now that it appears that appellant did raise the matter of partial injunctive relief below, I feel I must face up more squarely to that issue. Upon further consideration my prior concurring opinion is now withdrawn in toto, and the following observations substituted.

I do not quarrel with the view that the parties are "persons in competition with each other." The McGuire Act does not, contrary to appellant's argument, exempt from permissible fair trade agreements contracts between "producers, wholesalers, brokers, factors, retailers, or other persons in competition with each other," which might call for the application of the rule of *ejusdem generis* to limit competition to so-called horizontal levels, but reads "persons," not "other persons." Hence it withholds approval of agreements, express or by operation of law, between all competitors. If there were doubt of this interpretation the history and purpose of the Sherman Act, and the fact that McGuire's intent is to carve limited exceptions thereto, would supply the answer. True, since most competition is on horizontal levels, courts in particular cases may naturally fall into the use of that terminology. But, as appellant suggests as to the Sherman Act, quoting from Times-Picayune Publishing Co. v. United States, 345 U.S. 594, at page 615, 73 S.Ct. 872, at page 884, 97 L.Ed. 1277, " * * * the Act deals with competitive realities, not words." If bona fide competition exists here, I see no basis for restricting the language of the statute.

Competition has many meanings. In a sense the movie house and the television retailer are in competition with each other for the "amusement dollar." But here the essential commodity, gasoline, is the same. The servicing, etc., may be only the fringe. If owners of fleets of trucks or taxicabs may be influenced in their choice of purchasing gasoline from appellant or appellee by the question of price, I believe the latter are "persons * * * in competition with each other" within the Act. I can not say that the finding below that they are is plainly wrong. But if the parties are thus persons in competition it is because of appellee's unusual activities distinguishing it from other retailers whose business is less extensive. If those activities are truly severable, it seems arguable that the bar to appellant's injunction should be equally so. If appellant manufactured, and fair-traded, both gasoline and toothpaste, and appellee sold both, but the parties were actually in competition only as to the former, I could not say they were persons in competition as to both.

However, I suggest appellant's rights here are lost not because of appellee's special activities which made them persons in competition, but because its own activities made it a retailer. Agreements between retailers are not protected. The statute supplies no definition of retailer. The dictionary supplies two: one who sells in small quantities, and one who sells to the ultimate consumer. Of these the latter seems the more in keeping with the concept of the Fair Trade acts. It clearly covers appellant's "commercial accounts."

Either competition or retailing would result in the denial of complete relief to appellant, but the second must be fatal to even partial relief. It would be one thing to say that with respect to separable activities as to which the parties were not competing they were not "persons in competition with each other." It would be quite another to say that if appellant is to be classed as a retailer it can escape the force of the Act, even in part, by showing it is something additional. Price-fixing agreements between retailers are invalid per se, irrespective of the area of competition. On this basis there could be no possible issue of partial relief.