## Olin Mathieson Chemical Corporation v. West Chester Discount Health & Vitamin Center, Inc.

*Robert W. Lentz*, for plaintiff.

*Samuel M. Tollen*, for defendant.

KURTZ, J., October 27, 1962.—This is an application for preliminary injunction restraining alleged unfair

competition on the part of defendant, arising under the Pennsylvania Fair Trade Act, the Act of June 5, 1935, P. L. 266, sects. 1 and 2 as amended, and as sanctioned by the Miller-Tydings Act of July 7, 1955, 69 Stat. 282, 15 U. S. C. A. §1 and the McGuire Federal Trade Act of June 11, 1960, 74 Stat. 200, 15 U. S. C. A. §45. Although the complaint was filed on July 23, 1962, and a hearing upon a rule to show cause why the injunction should not issue was then fixed for July 30th, that hearing was continued at the behest of the parties and was not held until October 9, 1962. The original application is now before us for disposition after hearing held on the latter date.

At the hearing a stipulation of fact was presented. We accept the facts there stipulated, as amended by the testimony, as a portion of the findings of fact upon which we will base our conclusions. From the testimony which plaintiff offered at the hearing we find additional facts as follows:

In the vitamin field plaintiff manufactures and distributes two products, one known as Vigran and the other as Theragran. The fair trade price of Vigran, 100 tablets to the bottle, is $2.98, and of Theragran, $7.45. These two products are in fair and open competition with commodities of the same general class produced by others.

Plaintiff also produces and distributes a mineral oil for which a fair trade price has been fixed. This product is in fair and open competition with commodities of the same general class produced by others.

### Discussion

Defendant raises two points in opposition to the issuance of the injunction here sought. It first contends that plaintiff is not now in a position to seek the enforcement of the provisions of the act because the fair trade contract upon which it relies does not conform to

the act itself, and since the act, being in derogation of the common law, must be strictly construed, the injunction should not issue. The act provides that wilfully and knowingly selling any commodity "at less than the price stipulated in any contract entered into pursuant to its provisions" constitutes unfair competition. The contract here in question provides: "The Retailer will not advertise, offer for sale or sell Squibb Products in any state in which Fair Trade Laws are in effect at prices less than the minimum resale prices then and there in effect for such products. The minimum resale prices for Squibb Products now in effect are set forth in a schedule annexed hereto and made a part hereof."

The exhibit attached is headed "RESALE PRICE SCHEDULE." It contains the following language: "RESALE PRICES to consumers are shown under the price column headed 'Minimum Resale' in the then current 'Resale Price Schedule.'" It also provides: "WHERE STATE FAIR TRADE LAWS ARE IN EFFECT, these Resale Prices establish stipulated resale prices to consumers in states so providing and minimum resale prices in states so providing on "fair traded Squibb Products". The prices for Vigran and Theragran mentioned above appear on the schedule in the column headed "Minimum Resale".

We cannot accept defendant's contention that the language of the contract here in question, i.e., "the minimum resale prices" is such that it does not comply with the provisions of the statute where reference is made to "the price stipulated" in view of the language also contained in the schedule attached. A reading of the language of the contract itself, together with the language of the exhibit to which it makes reference, makes it clear that the prices contained in the latter are those at which plaintiff has stipulated their enumerated products will be sold to consumers in those

States in which fair trade laws are in effect. Admitting the necessity for a strict construction of the provisions of the act itself, we believe that by so holding we will not have been guilty of a violation of that admonition. Accordingly, we hold that the contract here in question does conform to the provisions of the act. It is a contract containing a "price stipulated". Wilfully and knowingly selling any commodity listed in such schedule at less than the price therein indicated is, under the provisions of the act, unfair competition and is actionable at the suit of the vendor of such commodity.

Defendant next contends that because plaintiff also sells its products to certain hospitals and a dental clinic located in this county at prices 33 1/3 percent less than the prices stipulated by the contract, it is in competition with defendant, and for that reason forfeits its right to enforce the provisions of its contract under the authority contained in the act. In that connection, defendant's position here is based upon the exemption contained in identical language in the Miller-Tydings Amendment and the McGuire Amendment, where it is provided that the grant of immunity from Federal proscription shall not "make lawful contracts or agreements providing for the establishment or maintenance of minimum . . . resale prices on any commodity [here involved] . . . between . . . persons, firms, or corporations in connection with each other". See Gulf Oil Corporation v. Mays, 401 Pa. 413, 417 (1960). Is plaintiff in competition with defendant insofar as the sales to the hospitals is concerned?

We do not believe that it is. There is no evidence on this record from which it can be found that defendant has ever sold these products to the hospitals or that it has solicited the hospitals' business. The record would indicate that defendant is a retailer selling its merchandise directly to purchasers who will consume it. Hospitals, on the other hand, do not purchase these

items for consumption but for use in the treatment of those consumers who become their patients and receive treatment within their walls. This is a very different type of sale, we think, from that contemplated by the Federal statutes when they make reference to contracts between persons in competition with each other.

Esso Standard Oil Co. v. Secatore's, Inc., 246 F. 2d 17 (1957), which appears to be the leading case upon this point, presents a vastly different situation. There the gasoline company not only supplied its gasoline to retail dealers but also sold directly to some ultimate consumers consisting mostly of operators of fleets of trucks. The court in that case held that the company was in competition with the "nonsigner" retailer defendant who also did substantial business with operators of fleets of motor vehicles and for that reason refused to enforce the retail price fixing agreement against a defendant who had not signed it: Gulf Oil Corp. v. Mays, supra, at page 419. We do not believe the situation shown to exist in the instant case is in any way comparable to the one outlined above.

In The Upjohn Co. v. West Chester Discount Health & Vitamin Center, Inc., no. 1530 in equity, decided by us on July 27, 1962, we refused to issue a preliminary injunction in much the same circumstances, relying on the authority of Sinclair Refining Company v. Schwartz, 398 Pa. 60 (1959), where it was held that it was necessary for plaintiff to show irreparable harm before such injunctive relief could be obtained. Since that time Mead Johnson & Co. v. Martin Wholesale Distributors, Inc., 408 Pa. 12 (1962), has been brought to our attention, in which it was held that in actions of this character it is not necessary for plaintiff to prove a price war or to establish monetary damages before relief can be afforded. That case relied upon Stuart v. Gimbel Brothers, Inc., 285 Pa. 102 (1926), where, at

page 109, the court said: "As applied in equity, 'irreparable injury' is, in fact nothing else than the antithesis of 'an adequate remedy at law'; where the latter does not exist (as in the case here), the former does, Clearly it would be 'only by conjecture and not by any accurate standard' that a jury could measure the damages caused by depriving plaintiff of a convenient access to his property, whether for its ordinary uses or for the erection of a building thereon."

". . . 'When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury.' ": Mead Johnson & Co. v. Martin Wholesale Distributors, Inc., supra, at page 15. By that standard the authority of Sinclair Refining Company, supra, would appear to be questionable at best. Apparently we were in error when we relied upon it in our earlier decision.

In these circumstances, it would seem that the injunction here sought must issue. Independent proof in accordance with the requirements of Gillette Co. v. Master, 408 Pa. 202 (1962), has been offered. By the presently existing standards, plaintiff has established that the right is clear, that there is urgent necessity since irreparable injury has been shown to exist and that greater injury will be done by refusing the injunction than by granting it since the legislature has declared that the conduct here under attack is injurious to the public good. We enter the following order:

### Order

And now, to wit, October 27, 1962, defendant is hereby preliminarily enjoined until final hearing from advetising, offering for sale or selling Squibb products known as Theragran and Vigran at less than the price stipulated by E. R. Squibb & Sons, Division of Olin Mathieson Chemical Corporation, for the sale thereof to consumers as set forth in a certain contract dated

April 1, 1962, between said company therein designated as the manufacturer and Anthony C. Tate, trading and doing business as Devon Pharmacy, at 133 Lincoln Highway, Devon, Pennsylvania, therein designated retailer; said plaintiff to first file a bond in the amount of $1,000 with security to be approved by this court, naming the Commonwealth as obligee, conditioned that if the injunction be dissolved because improperly granted, or for failure to hold a hearing, plaintiff shall pay to any person injured all damages sustained by reason of the granting of the injunction and all legally taxable costs and fees.