MARY MARGARET FRANCLEMONT vs. COMMISSIONER OF THE
DEPARTMENT OF EMPLOYMENT AND TRAINING & another.[1]

No. 95-P-981.

Middlesex. October 16, 1996. - February 28, 1997.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Employment Security,* Discharge, Eligibility for benefits, Findings,
Misconduct by employee. *Words,* "Competition," "Knowing violation."

Substantial evidence supported the determination of a review examiner of
the Department of Employment and Training that two businesses were
in competition with each other [270-271], that an employee of one company
disseminated confidential information to the other company in violation
of her employer's proprietary information policy [271-272], and that she did
so knowingly [272-274]: the review examiner correctly denied the former em-
ployee unemployment benefits.

CIVIL ACTION commenced in the Cambridge Division of
the District Court Department on February 11, 1994.

The case was heard by *Jonathan Brant,* J.

*Michael J. Pineault* for New England Business Service, Inc.
*Vida K. Berkowitz* for the plaintiff.

GREENBERG, J. Not until Mary Margaret Franclemont
placed a telephone call to her secretary, asking him to delete
certain files from her office computer, did her employer, New
England Business Service, Inc. (NEBS), discharge her from
her job. As a result, Franclemont applied for unemployment
compensation benefits pursuant to G. L. c. 151A. Her claim
was allowed and NEBS filed a timely appeal. After hearing, a
review examiner of the Department of Employment and
Training (department), relying on G. L. c. 151A, § 25(e)(2),[2]

[1]New England Business Service, Inc.
[2]General Laws c. 151A, § 25(e)(2), as amended through St. 1992, c. 26,
§ 19, reads in part:
"[N]o benefits shall be paid to an individual under this chapter . . .

reversed the allowance of benefits. The department's board of review (board) denied Franclemont's application for further review, rendering the review examiner's decision the final decision of the board. A judge of the District Court reversed the decision, and NEBS appeals. Because substantial evidence supports the review examiner's decision to deny unemployment benefits based upon Franclemont's violation of company rules, we affirm his decision. *Quintal* v. *Commissioner of the Department of Employment and Training,* 418 Mass. 855, 858-859 (1994).

We summarize the review examiner's findings of fact.[3] Franclemont worked for NEBS for over four years as a marketing manager until her termination on July 27, 1993. During the course of her employment she was informed of two company policies: one dealt with conflicts of interest and the other with preservation of proprietary information.[4] On

> "(e) . . . after the individual has left work . . . (2) by discharge shown to the satisfaction of the commissioner by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence. . . ."

[3] The board adopted the findings of the review examiner, and we therefore treat them as findings of the board.

[4] NEBS's conflict of interest policy reads in part:

> "As a manager, you are expected to be familiar with this policy and to be sure every member of your staff understands it as well. If you have any questions regarding a conflict or a potential for conflict between the interests of the Company and those of an employee, bring the matter to the attention of the facility's Human Resources Department."

NEBS's proprietary information policy reads in part:

> "To maintain the Company's competitive advantage, proprietary information should be shared only when business arrangements make it necessary, and it should be handled as delicately and discreetly as possible . . . . As a manager, you must be familiar with NEBS's policy on proprietary information and should make sure your staff members understand it as well. If you have any questions about the disclosure of information, consult the officer responsible for your business function, the Treasurer, or the Vice President-Finance."

42 Mass. App. Ct. 267                                      269

Franclemont *v.* Commissioner of the Department of Employment and Training.

January 25, 1993, Franclemont signed the acknowledgment form pertaining to the conflict of interest policy.

On Monday, July 26, 1993, a fellow employee found a letter and résumé from Franclemont to a competitor of NEBS left on a copy machine. The letter indicated that Franclemont had initiated a new marketing program at NEBS, and suggested that she could help the competitor company develop a similar program. When the documents reached her supervisor, Franclemont was told to stop working and go home. On route, she telephoned her secretary with instructions to delete certain files from her personal computer. His response was to erase the files and report the whole incident to the human resources department of NEBS. NEBS's officials managed to retrieve some of the files. The files revealed that Franclemont had sent the "Office Depot" proposal, a sales proposal that contained pricing information, to a marketing company operated by a former NEBS employee. Upon being confronted by her managers, Franclemont admitted to sending both pieces of information. She declared, however, that she did not believe that either the offer to implement a marketing program or the sales proposal violated either of the company's rules.

As to the company rules, the review examiner found as follows:[5]

> "The policies were reasonable in that they served to protect the employer's confidential information and market competitiveness. The claimant knew she could be discharged for violating the policies and the employer enforced the policies uniformly by discharging the claimant in compliance with the language of the policies."

Franclemont explained that the letter offering to implement a marketing program was a sham to help a personal friend who

---

[5]We need not address whether, pursuant to c. 151A, § 25(*e*)(2), Franclemont brought about her own unemployment through deliberate misconduct. See *Garfield* v. *Director of the Div. of Employment Security,* 377 Mass. 94, 95-96 (1979). Here, the board based its decision on the fact that Franclemont was discharged for having violated company rules, and that such violation was not a result of her incompetence.

worked at the competitor's business. The review examiner found that excuse incredible in light of Franclemont's other testimony that she was actively seeking other employment.

Franclemont challenges the decision on several grounds. First, she claims that she did not violate the conflict of interest policy by offering to implement a marketing program for another company because that company did not compete with NEBS. Second, she contends that the "Office Depot" presentation did not contain any proprietary information. Therefore, she argues, the materials she transmitted were not confidential. She also claims the decision was improper because the board failed to make subsidiary findings as to her state of mind.

As to the competition issue, neither party disputes the legal concept of competition. "Competition exists only where both parties are soliciting purchasers of similar goods in the same territory at the same time." *Silbert* v. *Kerstein*, 318 Mass. 476, 479 (1945). See *Ar-Ex Products Co.* v. *Capital Vitamin & Cosmetic Corp.*, 351 F.2d 938, 940 (1st Cir. 1965) (defining "competition" as seeking the same customers). In an earlier case, *Esso Standard Oil Co.* v. *Secatore's, Inc.*, 246 F.2d 17 (1st Cir. 1957), the First Circuit analyzed the concept under the Sherman Antitrust Act and the Federal Trade Commission Act. There the issue was whether a gasoline retailer, and a corporation that supplied gasoline to both retailers and ultimate consumers (operators of fleets of vehicles, such as trucks and taxi cabs), were in competition with each other. *Id.* at 19. The court recognized that both parties sold a certain percentage of gasoline to ultimate consumers. *Id.* at 20. The court found the parties to be in competition, regardless of the fact that ultimate consumers represented a large portion of one company's sales and a small portion of the other's; both companies were actively soliciting business in the same market. *Ibid.* See *Brown Shoe Co.* v. *United States*, 370 U.S. 294, 325, 336-337 (1962) (emphasizing the importance of commercial realities and reasonable interchangeability of product use in determining the existence of competition).

The finding that the two companies were competitors was a finding of fact. Whether businesses engage in commercial competitive conduct brings into play the "experience, technical competence, and specialized knowledge" of the depart-

ment, and its finding on that question is entitled to considerable weight. G. L. c. 30A, § 14(7) (1992 ed.). *Olechnicky* v. *Director of the Div. of Employment Security*, 325 Mass. 660, 663 (1950). NEBS argues that the companies occupy the same market niches, while Franclemont claims the contrary. The review examiner's finding is supported by substantial evidence that the two companies occupy overlapping marketing niches. Here, the board made no subsidiary findings that Franclemont's disclosures were to a competitor, but the record amply supports that proposition. The record of the hearing suggests that both companies are engaged in similar, though not entirely consonant, lines of business. While the product is not identical, each engages in the business of selling checks. The competitor manufactures and sells bank checks; NEBS sells software-compatible "pinfeed" checks. The focus of NEBS's business is the manufacturing of continuous business forms, but the competitor markets certain types of such forms. The companies, then, do seek to sell similar goods to the same customers. See *Brown Shoe Co., supra.* In addition, as the court pointed out in *Esso,* as long as the volume of sales of the relevant product is not de minimis, the fact that one company may not engage in large-volume sales, while the other does, is irrelevant.

The review examiner also found that, in the course of her job search, Franclemont disseminated confidential pricing information in violation of the proprietary information policy. NEBS's policy defines proprietary information as information such as "facts, plans, and concepts connected to its financial operations or business strategy, commonly referred to as 'insider information.'" The policy also prohibits NEBS employees from discussing "company procedures, operations, research findings, sales results, or strategies." Franclemont transmitted a copy of the company's "Office Depot" presentation to a person at Janus Marketing. This presentation detailed the structure of NEBS's shipping and handling charges. Because the structure of such charges varies among companies, such information can be considered "company procedures" within the meaning of the policy. This evidence

supports the examiner's finding that the claimant disseminated proprietary information.[6]

The inquiry does not end there. According to the statute, conduct in violation of company policy must also be "knowing." The review examiner found that the claimant knew of the policies, within the meaning of G. L. c. 151A, § 25(e)(2). This presents a mixed question of law and fact. Cf. *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. 593, 595 (1974) (mixed question of law and fact whether claimant "voluntarily" left work within the meaning of G. L. c. 151A, § 25[e][1]). First, as a matter of law, what constitutes a "knowing" violation of a company policy for purposes of G. L. c. 151A, § 25(e)(2)? Second, as a factual matter, did the employee know of the policies? "To the extent that an agency finding is one of fact, it must stand unless 'unsupported by substantial evidence.' [G. L. c. 30A, § 14(8)(e)]. . . . On the other hand, to the extent that an agency determination involves a question of law, it is subject to de novo judicial review. *Id.* § 14(8)(c)." *Raytheon*, 364 Mass. at 595.

As a matter of law, an employee can only be deemed to have committed a "knowing" violation of an employer's rule or policy within the meaning of § 25(e)(2) if the employee acted intentionally. It is not sufficient that the employee merely be informed of the rule or policy. *Still* v. *Commissioner of the Dept. of Employment and Training*, 423 Mass. 805, 808, 814-815 (1996) (court found review examiner committed error of law where examiner based "knowing violation" on fact that employee "knew of the rule or policy by having been issued a copy of them [*sic*] and having been

---

[6]The District Court judge disputed the review examiner's findings that Franclemont violated NEBS's confidential information policy. He reasoned that the materials sent out by Franclemont contained only "sales jargon" and were available from "other sources and known in the industry." The judge did not explain what his reference to "sales jargon" meant, and, except for noting that Franclemont had not signed a covenant not to compete with NEBS, he did not in any way discuss the review examiner's rejection of Franclemont's explanation of her dissemination of "confidential pricing information" to NEBS's competitor. In this respect, the District Court judge exceeded his role and made findings unsupported by evidence in the record. "[A] reviewing court is not empowered to determine the facts anew, or to judge credibility or to draw different inferences from the facts found." *Gnerre* v. *Massachusetts Commn. Against Discrimination*, 402 Mass. 502, 509 (1988). See *Kowalski* v. *Director of the Div. of Employment Security*, 391 Mass. 1005 (1984).

instructed regarding them and avoidance of violations there-of"). A mere violation of an employer's rule does not automatically justify a denial of benefits. *Smith* v. *Director of the Div. of Employment Security*, 376 Mass. 563, 566 (1978).

In interpreting the phrase "knowing violation," we have stressed that the use of the term mandates investigation of the employee's state of mind. *Still*, 423 Mass. at 810, and cases cited. To prove a "knowing violation" the employer must prove: "(a) consciousness on the part of the employee of what it is she is doing and (b) awareness that she is in the process of violating a rule or policy of the employer." *Id.* at 813, quoting *Still* v. *Commissioner of the Dept. of Employment and Training*, 39 Mass. App. Ct. 502, 510 (1995).

Here, the examiner made factual findings that Franclemont admitted distributing a copy of the "Office Depot" presenta-tion to Janus Marketing. In addition, she testified to having sent her resume and cover letter to another company while offering to establish a new marketing program for that company.

Whether the claimant can, in fact, be charged with aware-ness that she was in the process of violating NEBS's policy warrants a closer look. The record supports NEBS's position on this point. Mr. Whalen, the human resource manager of NEBS, testified that Franclemont was given a copy of the policies. In addition, she signed a form acknowledging her status as "in compliance" with the conflict of interest policy. It remains, however, that according to *Still*, an employer can-not satisfy its burden merely by showing that the employee was aware of the rule or policy. In regard to the "Office Depot" presentation, she testified that: (1) she did not believe the presentation contained proprietary information; and (2) when she forwarded the presentation, she claimed she was not aware that she was offending NEBS in any way. At the hearing, she testified that she understood the policies. She further testified that her interpretation of the policies merely differed from that of the employer. The examiner specifically found her testimony on this aspect of the claim "not cred-ible" because it was "self-serving and . . . controverted by the considerable evidence of the claimant's job search activ-

ity." The examiner's finding on the factual issue is supported by substantial evidence.

The judgment is reversed and a new judgment is to enter affirming the decision of the board.

*So ordered.*